IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| AMBER MOTKO : <br> 44 Kelsey Drive : <br> Schuylkill Haven, PA 17972 : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> GEISINGER HEALTH PLAN : <br> 300 Hollywood Blvd. : <br> Orwigsburg, PA 17961 : <br> : <br> Defendant. : | Civil Action No.: _____ <br><br> **JURY TRIAL DEMANDED** |

---

## **COMPLAINT – CIVIL ACTION**

Plaintiff, Amber Motko ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Geisinger Health Plan ("Defendant"), alleges as follows:

## **INTRODUCTION**

1. Plaintiff initiates this action contending Defendant violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., by failing to provide reasonable accommodations to Plaintiff; failing to engage in the interactive process; and terminating Plaintiff because of her actual and/or perceived disability, because Defendant regarded her as being disabled, for her past record of impairment,

1

and in retaliation for requesting a reasonable accommodation in connection thereto, in violation of the ADA.[1]

## PARTIES

2. Plaintiff, Amber Motko, is a citizen of the United States and Pennsylvania and currently maintains a residence at 44 Kelsey Drive, Schuylkill Haven, PA 17972.

3. Upon information and belief, Defendant, Geisinger Health Plan, is a non-profit company organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business located at 300 Hollywood Blvd., Orwigsburg, PA 17961.

## JURISDICTION AND VENUE

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about June 7, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2023-05782.

---

[1] Plaintiff intends to amend his Complaint to include a count under the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. C.S.A. § 951, et seq., once his claims have been administratively exhausted with the Pennsylvania Human Relations Commission, which will occur in June 2024. Plaintiff's claims under the PHRA would mirror Plaintiff's ADA claims.

Plaintiff's EEOC charge was filed within one-hundred and eighty (180) days of the unlawful employment practice.

6. By correspondence dated March 28, 2024, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

7. Plaintiff filed the instant action within the statutory time frame applicable to her claims.

8. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and initiated pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as well as it is a civil rights action arising under the laws of the United States.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, as the parties reside in this judicial district, doing business therein, and the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania.

**FACTUAL ALLEGATIONS**

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. Plaintiff began her employment with Defendant on or about March 6, 2018, in the position of RN Case Manager.

14. By way of background, Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in or around March 2021, and told her director report and/or Defendant's Supervisor, Dave Augustine ("Mr. Augustine"), shortly thereafter.

15. ADHD constitutes a disability within the meaning of the ADA and PHRA in that it substantially impairs one or more major life activities.

16. Almost immediately thereafter, Mr. Augustine began making comments to Plaintiff regarding her disability.

17. Specifically, Mr. Augustine would say, among other things, remarks such as, "I don't know how your brain works."

18. Further, he would refer to Plaintiff's "ADHD brain," in an intentionally discriminatory manner.

19. Furthermore, Mr. Augustine would state, "I don't know how that works with your ADHD," implying its interference with Plaintiff's life and/or job functions.

4

20. Notably, Mr. Augustine continued making these types of comments on a routine basis from the time Plaintiff disclosed her ADHD diagnosis to him up until her termination from employment.

21. In or around March 2021, subsequent to the novel corona-virus pandemic and its shut-down, Plaintiff notified Mr. Augustine's direct report, Diana Jackson ("Ms. Jackson"), that completing Defendant's heavy workload remotely was impractical, if not impossible, and as a result, she was falling behind on work.

22. Thereafter, Plaintiff was permitted to report to Defendant's office, rather than work remotely.

23. Subsequent to notifying Mr. Augustine of her disability, Plaintiff requested a reasonable accommodation of having additional time to complete tasks, for a decreased work load, and/or additional help and/or assistance.

24. Notably, despite this, Mr. Augustine began mandating Plaintiff to cover empty positions and/or vacations, despite being fully aware that Plaintiff was already behind, and of the complications she was experiencing in connection with her disability and need for a reasonable accommodation.

25. Around that same time, in response to her aforementioned request(s) for a reasonable accommodation, Mr. Augustine had Defendant's Clinical Educator, Tammy Pittsman ("Ms. Pittsman"), sit in and evaluate Plaintiff's work performance, and how she completed tasks.

26. At the conclusion of this evaluation, Ms. Pittsman advised Mr. Augustine that Plaintiff did a great job, performed her job satisfactorily, and that Ms. Pittsman was unsure what his concerns were.

27. Notably, despite Ms. Pittsman's positive evaluation and Plaintiff's repeated request(s) to be reasonably accommodated, Defendant and/or Mr. Augustine continued to refuse to engage in the interactive process with Plaintiff to determine a reasonable accommodation.

28. Plaintiff's original request for a reasonable accommodation – having additional time to complete tasks, for a decreased work load, and/or additional help and/or assistance – which she made when she first disclosed her disability, was never addressed by Mr. Augustine.

29. Ultimately, in or around September 2022, Plaintiff was suspended by Mr. Augustine and was told her office was being given to Defendant's Office Manager, despite being in her office for the previous five (5) years.

30. It should be noted that the employee who received Plaintiff's office was an employee Plaintiff had submitted multiple complaints about to Mr. Augustine, Defendant's Management, and to Defendant's Human Resources ("HR") department for bullying and harassment.

31. However, none of Plaintiff's complaints and/or concerns were ever investigated and/or addressed.

6

32. On one occasion, in reply to Plaintiff's complaint of this coworker, Megan Post ("Ms. Post"), Defendant's Medical Home County Manager, stated, "I told her to back off of you, but I guess it didn't work," and took no remedial and/or corrective action.

33. Upon information and belief, this same employee who was being given Plaintiff's office did not suffer from ADHD, nor did she require and/or request a reasonable accommodation.

34. Upon Plaintiff's return-to-work from the aforementioned suspension, Mr. Augustine placed Plaintiff on a performance improvement plan.

35. At that time, Defendant still had not engaged in the interactive process with Plaintiff to determine a reasonable accommodation in connection with her disability despite her request(s) for same, and Mr. Augustine's incessant discriminatory comments regarding her disability continued to persist.

36. On or about January 6, 2023, Plaintiff was abruptly terminated from employment by Mr. Augustine, Defendant's Manager, Jennifer Remetta ("Ms. Remetta"), and an HR representative, Jen Romano ("Ms. Romano").

37. Defendant's reason for Plaintiff's termination was being "behind on documentation."

38. In response, Plaintiff asked Ms. Romano, "prior to termination, if within the company, knowing if I was behind on documentation and having

7

difficulty catching up or maintaining any normal caseload or workload, if they would have expected me to be covering for other people's caseload."

39. In reply, Ms. Romano stated, "[Defendant] would absolutely not require or request anyone who was knowingly behind on work to cover other's work."

40. Given Ms. Romano's response, Plaintiff asked Mr. Augustine "If that's true, then why have I been mandated to cover for empty positions and vacations over the past year when I was knowingly behind," to which Mr. Augustine gave no response.

41. Despite bringing this to the attention of Ms. Romano and Ms. Remetta, Defendant proceeded with Plaintiff's termination from employment.

42. In light of the foregoing, it is believed and therefore averred that Defendant terminated Plaintiff's employment because of her actual and/or perceived disability, because Defendant regarded her as being disabled, for her past record of impairment, and in retaliation for her request(s) for an accommodation in connection thereto, in violation of the ADA.

43. Additionally, it is believed, and therefore averred, that Defendant failed to engage in the interactive process with Plaintiff to determine a reasonable accommodation, in violation of the ADA.

44. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of

employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION, RETALIATION, AND FAILURE TO ACCOMMODATE

45. Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

47. At all times relevant hereto, Defendant employed at least fifteen (15) employees.

48. Plaintiff is a qualified individual with one or more disabilities within the meaning of the ADA.

49. Defendant was aware of Plaintiff's disability, record of impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

50. Plaintiff asked for a reasonable accommodation in connection with her disability.

9

51. Defendant failed to engage in the interactive process with Plaintiff to determine whether she could perform the essential functions of her job with or without a reasonable accommodation.

52. Upon information and belief, Defendant retaliated against Plaintiff for her request for a reasonable accommodation in connection with her disability.

53. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process to determine and consider reasonable accommodations for Plaintiff, by failing to provide reasonable accommodations to Plaintiff, and by terminating Plaintiff's employment because of her actual and/or perceived disability, because Defendant regarded her as being disabled, for her past record of impairment, and/or in retaliation for her request(s) for reasonable accommodations in connection to her disability.

54. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, damage to reputation, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against

Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

    A.    Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

    B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

    C.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

    D.    Pre-judgment interest in an appropriate amount;

    E.    Such other and further relief as is just and equitable under the circumstances; and

    F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                    Respectfully submitted,

                    **MURPHY LAW GROUP, LLC**

By:   */s/ Mary Kramer, Esq.*
        Mary Kramer, Esq.
        1628 John F. Kennedy Blvd., Suite 2000
        Philadelphia, PA 19103
        Phone: (267) 273-1054
        Fax: (215) 525-0210
        mkramer@phillyemploymentlawyer.com
        *Counsel for Plaintiff*

Dated: April 29, 2024

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.