**UNITED STATES DISTRICT COURT**
**IN THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMBER MOTKO | : |
| 44 Kelsey Drive | : |
| Schuylkill Haven, PA 17972 | : |
|     Plaintiff | : |
|     v. | : Civ No. 3:24-cv-00732-MEM |
| | : Judge Mannion |
| GEISINGER HEALTH PLAN | : |
| 300 Hollywood Blvd. | : |
| Orwigsburg, PA 17961 | : |
|     Defendant. | : |

## JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the Local Rules or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

## 1. Principal Issues

1.1    Separately for each party, please give a statement summarizing this case:

By plaintiff(s):

*Plaintiff began her employment with Defendant on or about March 6, 2018, in the position of RN Case Manager. Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in or around March 2021, and told her director report and/or Defendant's Supervisor, Dave Augustine ("Mr. Augustine"), shortly thereafter. ADHD constitutes a disability within the meaning of the ADA and PHRA in that it substantially impairs one or more major life activities.*

*Almost immediately thereafter, Mr. Augustine began making comments to Plaintiff regarding her disability. Specifically, Mr. Augustine would say, among other things, remarks such as, "I don't know how your brain works." Further, he would refer to Plaintiff's "ADHD brain," in an intentionally discriminatory manner. Mr. Augustine would state, "I don't know how that works with your ADHD," implying its interference with Plaintiff's life and/or job functions. Notably, Mr. Augustine continued making these types of comments on a routine basis from the time Plaintiff disclosed her ADHD diagnosis to him up until her termination from employment.*

*In or around March 2021, subsequent to the novel corona-virus pandemic and its shut-down, Plaintiff notified Mr. Augustine's direct report, Diana Jackson ("Ms. Jackson"), that completing Defendant's heavy workload remotely was impractical, if not impossible, and as a result, she was falling behind on work. Thereafter, Plaintiff was permitted to report to Defendant's office, rather than work remotely.*

*Subsequent to notifying Mr. Augustine of her disability, Plaintiff requested a reasonable accommodation of having additional time to complete tasks, for a decreased work load, and/or additional help and/or assistance. Despite this, Mr. Augustine began mandating Plaintiff to cover empty positions and/or vacations, despite being fully aware that Plaintiff was already behind, and of the complications she was experiencing in connection with her disability and need for a reasonable accommodation.*

*Around that same time, in response to her aforementioned request(s) for a reasonable accommodation, Mr. Augustine had Defendant's Clinical Educator, Tammy Pittsman ("Ms. Pittsman"), sit in and evaluate Plaintiff's work performance, and how she completed tasks. At the conclusion of this evaluation, Ms. Pittsman advised Mr. Augustine that Plaintiff did a great job, performed her job satisfactorily, and that Ms. Pittsman was unsure what his concerns were. Despite Ms. Pittsman's positive evaluation and Plaintiff's repeated request(s) to be reasonably accommodated, Defendant and/or Mr. Augustine continued to refuse to engage in the interactive process with Plaintiff to determine a reasonable accommodation.*

*Plaintiff's original request for a reasonable accommodation – having additional time to complete tasks, for a decreased work load, and/or additional help and/or assistance – which she made when she first disclosed her disability, was never addressed by Mr. Augustine. Ultimately, in or around September 2022, Plaintiff was suspended by Mr. Augustine and was told her office was being given to Defendant's Office Manager, despite being in her office for the previous five (5) years.*

*It should be noted that the employee who received Plaintiff's office was an employee Plaintiff had submitted multiple complaints about to Mr. Augustine, Defendant's Management, and to Defendant's Human Resources ("HR") department for bullying and harassment. However, none of Plaintiff's complaints and/or concerns were ever investigated and/or addressed. On one occasion, in reply to Plaintiff's complaint of this coworker, Megan Post ("Ms. Post"), Defendant's Medical Home County Manager, stated, "I told her to back off of you, but I guess it didn't work," and took no remedial and/or corrective action. Upon information and belief, this same employee who was being given Plaintiff's office did not suffer from ADHD, nor did she require and/or request a reasonable accommodation.*

*Upon Plaintiff's return-to-work from the aforementioned suspension, Mr. Augustine placed Plaintiff on a performance improvement plan. At that time, Defendant still had not engaged in the interactive process with Plaintiff to*

*determine a reasonable accommodation in connection with her disability despite her request(s) for same, and Mr. Augustine's incessant discriminatory comments regarding her disability continued to persist.*

*On or about January 6, 2023, Plaintiff was abruptly terminated from employment by Mr. Augustine, Defendant's Manager, Jennifer Remetta ("Ms. Remetta"), and an HR representative, Jen Romano ("Ms. Romano"). Defendant's reason for Plaintiff's termination was being "behind on documentation." In response, Plaintiff asked Ms. Romano, "prior to termination, if within the company, knowing if I was behind on documentation and having difficulty catching up or maintaining any normal caseload or workload, if they would have expected me to be covering for other people's caseload." In reply, Ms. Romano stated, "[Defendant] would absolutely not require or request anyone who was knowingly behind on work to cover other's work."*

*Given Ms. Romano's response, Plaintiff asked Mr. Augustine "If that's true, then why have I been mandated to cover for empty positions and vacations over the past year when I was knowingly behind," to which Mr. Augustine gave no response. Despite bringing this to the attention of Ms. Romano and Ms. Remetta, Defendant proceeded with Plaintiff's termination from employment.*

By defendant(s):

*Plaintiff alleges that in the course of her employment with Defendant Geisinger Health Plan, the Defendant discriminated against her on the basis of her disability. Plaintiff further alleges Defendant discriminated and retaliated against her and failed to accommodate her disability. Defendant denies Plaintiff's allegations. Defendant further submits that all actions taken by Defendant relative to Plaintiff were based upon legitimate non-discriminatory business reasons. As a result, Plaintiff's Complaint will be dismissed at the summary judgment stage.*

    1.2    The facts the parties <u>dispute</u> are as follows:

*The majority of facts are in dispute. Defendants deny that they have discriminated against Ms. Motko in any way in the assignment of duties, discipline, or termination.*

<u>agree</u> upon are as follows:

*The parties agree on the date Defendant hired Plaintiff, Plaintiff's position with Defendant, and the date of Plaintiff's termination.*

1.3     The legal issues the parties <u>dispute</u> are as follows:

*The parties dispute most legal issues.*

Agree upon are as follows:

*The parties agree on issues of venue and jurisdiction.*

1.4     Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue: *None.*

1.5     Identify any named parties that have not yet been served: *None.*

1.6     Identify any additional parties that:

plaintiff(s) intends to join: *None*.

defendant(s) intends to join: *None*.

1.7     Identify any additional claims that:

plaintiff(s) intends to add: *Claims pursuant to the PHRA*

defendant(s) intends to add: *None*.

## 2.0     Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

2.1     Separately for each party, list by <u>name and title/position</u> each person whose identity has been disclosed.

Disclosed by Plaintiff:   *Plaintiff has not yet made any 26(a)(1) disclosures and will do so within the time provided by the Rules of Court.*

Disclosed by Defendant:   *Defendants have not yet made any 26(a)(1) disclosures and will do so within the time provided by the Rules of Court.*

## 3.0     Early Motions

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| *Motion to Amend Complaint* | *Plaintiff* | *August 2024* |
| *Motion for Summary Judgment* | *Defendant* | *Conclusion of Discovery* |

## 4.0   Discovery

4.1   Briefly describe any discovery that has been completed or is in progress:

By plaintiff(s):  *There has been no discovery commenced or in progress by the Plaintiff. Plaintiff intends to exchange initial written discovery in the near future.*

By defendant(s):  *There has been no discovery commenced or in progress by the Defendants. Defendant intends to exchange initial written discovery in the near future.*

4.2   Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

*Plaintiff and Defendant will exchange written discovery requests and will conduct depositions of individuals, which are likely to include those individuals named in the Parties' Initial Disclosures.*

4.3   Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects,</u> indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

*None at this time.  The Parties will attempt to informally address any issues prior to seeking court intervention.*

4.4   Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:

*Based upon the actual written requests Defendants may seek a protective order or confidentiality for personnel files, salary information, patient identities and other protected or sensitive information.*

4.5    For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

4.5.1 depositions (excluding experts) to be taken by:

plaintiff(s): Pursuant to Federal rules

defendant(s): Pursuant to federal rule (3-4 anticipated)

4.5.2 interrogatories to be served by:

plaintiff(s):  25    defendant(s):   25

4.5.3 document production requests to be served by:

plaintiff(s): as needed  _ defendant(s): as needed

4.5.4 requests for admission to be served by:

plaintiff(s):  Pursuant to Federal Rules

defendant(s):  Pursuant to Federal Rules

4.6    Discovery of Electronically Stored Information

Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

None at this time.

**5.0    Protective Order**

    5.1    If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent. Defendants may seek the use of a protective Order/Confidentiality Order for the uses of patient identifiers in research files, confidential wage and salary information.

    5.2    If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

        *To be determined based on contents of Protective Order requested.*

**6.0    Scheduling**

    6.1    Final date for joining additional parties:

        *N/A* _____ Plaintiff(s)

        *N/A* _____ Defendants(s)

    6.2    Final date for amending pleadings:

        Plaintiff(s): August 16, 2024

        Defendants(s): August 30, 2024

    6.3    All fact discovery commenced in time to be completed by: *January 24, 2025*

    6.4    All potentially dispositive motions should be filed by: *March 28, 2025*

    6.5    Reports from retained experts due:

        from plaintiff(s) by *May 29, 2025*

        from defendant(s) by *June 30, 2025*

    6.6    Supplementations due *July 18, 2025*

    6.7    All expert discovery commenced in time to be completed by *July 18, 2025* _____

6.8     This case may be appropriate for trial in approximately:

_____ 240 Days from the filing of the action in this court

_____ 365 Days from the filing of the action in this court

XXX\_\_ 545 Days from the filing of the action in this court

6.9     Suggested Date for the final Pretrial Conference: *October 2025*

6.10 Trial

6.10.1      Suggested Date for Trial: *November 2025*
(month/year)

## 7.0     Certification of Settlement Authority (All Parties Shall Complete the Certification)

I hereby certify that the following individual(s) have settlement authority.

For the Plaintiff(s):

*Mary Kramer, Plaintiff's counsel.*

For the Defendant(s):

*Cindy Sheridan, Esq., Associate Chief Legal Officer - Litigation*
*May be contacted through the undersigned litigation counsel.*

## 8.0     Alternative Dispute Resolution ("ADR")

8.1     Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

ADR procedure: *The parties have agreed to evaluate possible mediation after initial discovery.*

Date ADR to be commenced: *Possibility of Mediation to be explored following the exchange of initial written discovery responses.*

Date ADR to be completed: *Unknown*

8.2     If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a

procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

*Plaintiff is available for mediation or other alternative dispute resolution. At this time Defendant is available for mediation as well.*

8.3    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

## 9.0    Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: Y___ N<u>X</u>

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings: N/A

Scranton/Wilkes-Barre
Harrisburg
Williamsport

## 10.0    Other Matters

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute. *None at this time.*

## 11.0    Identification of Counsel

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures. Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy. Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference. The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party. Also please indicate ECF User status below.

Dated: July 19, 2024  /s/ *Mary Kramer*
        Mary Kramer, Esq.
        **MURPHY LAW GROUP, LLC**
        Eight Penn Center, Suite 2000
        1628 John F. Kennedy Blvd.
        Philadelphia, PA 19103
        (267) 273-1054
        *Attorney(s) for Plaintiff(s)*

    X  ECF User(s)
       Waiver requested (as separate document)
       Fed.R.Civ.P.7.1 (statement filed if necessary)*

Dated: July 22, 2024  */s/Anthony (T.J.) Andrisano*
        Anthony (T.J.) Andrisano, Esq.
        Amanda M. Roesch, Esq
        Buchanan Ingersoll Rooney PC
        409 North Second Street, Suite 500
        Harrisburg, PA 17101-1357
        717-237-4800
        Anthony.andrisano@bipc.com
        Amanda.roesch@bipc.com
        *Attorneys(s) for Defendant(s)*

    X  ECF User(s)
    X  Waiver requested (as separate document)
    X  Fed.R.Civ.P.7.1 (statement filed if necessary)*

* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.